HAROLD L. BLACK *vs.* CHILD'S COMPANY OF PROVIDENCE.

MARCH 22, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence in the preparation and serving of food which the plaintiff ate at defendant's restaurant. A jury in the

superior court returned a verdict for the defendant. Plaintiff's motion for a new trial was granted. The case is before us on defendant's exceptions to this decision and to the denial of its motion for a directed verdict.

The plaintiff's testimony in substance was that on November 16, 1944 he, with a companion who is now his wife, went to defendant's restaurant in the city of Providence for lunch. At that time he had difficulty in chewing his food as he had an upper denture but no lower teeth. He ordered and was served chicken or turkey croquettes and mashed potatoes. The croquettes were covered with gravy. While eating this food, apparently first crushing the croquettes with his fork, he had a violent coughing and choking attack, which subsided after drinking a glass of water, and he then resumed eating. As he was about to finish, he saw a toothpick in the food remaining on his plate. He slid the toothpick aside and when the waitress came he showed it to her, saying jokingly: "Is there any extra charge for the toothpick?"

The plaintiff testified that within two days after this occurrence he began to feel pains in the region of his stomach. By the next morning the pains were so severe that he called a doctor, who, after the administration of medicine without result, ordered his removal to a hospital where a surgeon operated upon him for acute appendicitis. Instead of a diseased appendix, the surgeon found and removed from plaintiff's colon four toothpicks stuck together as if one. These toothpicks and a sample of the toothpicks that were kept by the defendant at the cashier's desk, as will presently appear, were introduced in evidence and seem to be similar in all respects. There was also testimony from the plaintiff as to where and what he ate and drank between the time he had lunch in defendant's restaurant and the time when he became ill. He was supported by his wife on these points and also with reference to his violent choking attack.

No medical evidence was introduced by the defendant. The medical evidence for the plaintiff and the hospital re-

cords admittedly showed that the four closely-bound tooth-picks were removed from plaintiff's body. There was also uncontradicted medical evidence to the effect that the plain-tiff could have unknowingly swallowed the toothpicks when he had the choking attack; that at the time of the operation the toothpicks "looked pretty fresh"; and that such appear-ance indicated that they had not been very long in the alkaline fluid of the intestine.

The defendant called as witnesses thirteen employees, namely, Alice Szymkiewiscz, who testified that her job was making croquettes, a cook's helper, a counterman, the man-ager, the hostess and eight waitresses, to meet plaintiff's claim that the toothpicks which were removed from his body were in the food served to him in defendant's restaurant. From time to time and for the purpose of general super-vision, the manager and the hostess went into that part of the kitchen where the food was actually prepared, but the waitresses only went into that part of the kitchen where the prepared food was handed to them for serving. There was also testimony from these witnesses to the effect that about fifteen persons, with an average of three cooks, worked in that part of the kitchen reserved for the actual preparation of food. More specifically, Alice Szymkiewiscz testified that there were, among others, "three working around the stove in the kitchen. The butcher is grinding the meat, and mak-ing everything."

Defendant's witnesses all testified that no toothpicks were used in connection with the preparation and the serving of either food or drinks, and that toothpicks were kept only on the cashier's desk for the convenience of the customers. With possibly one or two exceptions, all the waitresses testi-fied that no one requested them to come to court; that they came either as companions to some of the others, or out of pure curiosity; that they had not discussed the case with anyone; and that, prior to their attendance in court, they did not know what the matter in dispute was or that they were to be called as witnesses.

Defendant's exception to the denial of its motion for a directed verdict rests on the theory that, if it is to be held liable, negligence on its part can only be found by resorting to inference upon inference, which is not permissible. It argues that in the circumstances one must infer, from the fact that the plaintiff found a toothpick on his plate, that the toothpicks which were removed frim his body were in the food that he ate; and then, based solely on this inference, one must further infer that there was negligence in the preparation of that food.

We do not agree with such contention. The two inferences are different and independent of each other. If one believes the plaintiff, there was direct evidence that a toothpick was in the food on his plate, and uncontradicted evidence that toothpicks of the same type were removed from his body. Since the evidence excludes the ingestion of toothpicks from any other source, the inference that the toothpicks in the plaintiff's body were in the food that he ate is reasonable. In the circumstances it then became a question for the jury to determine, in the first instance, whether the defendant had in fact exercised reasonable care in the preparation of such food or, stated otherwise, whether the defendant was as careful as it claimed to have been according to its evidence. *Chisholm* v. *Kresge Co.*, 55 R. I. 422; *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43.

The defendant tries to avoid the pertinency of the two cases just cited by arguing that in those cases an inference of negligence was based upon the known presence of glass or wire in the food, but in the case at bar the presence of the toothpicks in plaintiff's food is mere conjecture. This argument is without persuasive force. Negligence may be established by circumstantial as well as by direct evidence. Here the defendant designates as conjecture that which reasonably could be inferred as probable, especially in view of the uncontradicted medical evidence.

Following up its argument with reference to the *Chisholm* and *Minutilla* cases, the defendant urges that the instant

case is controlled by *Kilgore* v. *Shepard Co.*, 52 R. I. 151, and *DaRosa* v. *First National Stores, Inc.*, 62 R. I. 213. Those cases are clearly distinguishable in their facts from the present case. In the *Kilgore* case the plaintiff, a customer of the defendant, was injured when the leg of a chair broke and she was thrown to the floor. In sustaining a directed verdict for the defendant, this court, at page 154 of the opinion, said that even if plaintiff's claim were true there was "no testimony tending to show how long the leg had not been in its normal position or to show that defendant's servants should have had knowledge of the defect by the exercise of reasonable care." In the *DaRosa* case, where a direction of verdict for the defendant also was sustained, the plaintiff fell on the floor of defendant's store. Although the plaintiff testified that her foot slipped, she could not tell what she slipped on; and there was no evidence of any foreign substance on the floor at the place of the accident or of any condition of the floor that might have caused her to slip. It is unnecessary to point out further the factual differences between those two cases and the case at bar. Defendant's exception to the denial of its motion for a directed verdict is overruled.

Under its exception to the granting of plaintiff's motion for a new trial, defendant reiterates the contention that we have just considered and also contends that the trial justice usurped the function of the jury in granting such motion. The duty of a trial justice in passing on a motion for a new trial is fully and clearly set out in *Surmeian* v. *Simons*, 42 R. I. 334, which case has been uniformly followed in many later decisions of this court. Our examination of the rescript of the trial justice in the instant case shows that he has not misconceived or overlooked any material evidence, and that he has given us the benefit of his independent judgment on the weight of the conflicting evidence and the credibility of the witnesses.

The credibility of the plaintiff was not questioned by the trial justice. On the other hand, in the absence of any ex-

planation for their nonappearance, he was apparently strongly impressed, adversely to the defendant, by its failure to produce more direct evidence from witnesses who worked in that part of the kitchen where the food was actually prepared; and, further, by the more or less similar explanation of the waitresses as to why they happened to be in court to testify in this case. He concludes his independent consideration of the evidence by saying that in his judgment the verdict was against the weight of the evidence and did not do substantial justice between the parties. In evaluating the rescript we have discounted in full any incidental consideration that he may have given to an affidavit of newly discovered evidence which was filed by the plaintiff, as such affidavit clearly does not conform to our well-established rule governing newly discovered evidence. See *Zoglio* v. *Waterman Co.*, 39 R. I. 396.

Where a trial justice has apparently performed his duty in passing on a motion for a new trial, his decision made upon conflicting evidence, although not binding on us, is entitled to great presuasive force and will not be disturbed unless such decision is found to be clearly wrong. *Allsop* v. *Gallant*, 62 R. I. 399. In the circumstances of this case we cannot say, as the defendant in substance argues, that the trial justice in setting aside the verdict arbitrarily and without considered reason substituted his judgment for that of the jury. Since we are unable to find that he was clearly wrong in granting plaintiff's motion for a new trial, defendant's exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for a new trial.

*Hinckley, Allen, Tillinghast & Wheeler* (*Harold A. Andrews,* of Counsel), for plaintiff.

*Sherwood & Clifford* (*Sidney Clifford* and *Raymond E. Jordan,* of Counsel), for defendant.